# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOHN THOMAS SCOTT,

      Plaintiff,

v.                                                      CV 10-0429 MCA/WPL

GENERAL MILLS,

      Defendant.

# ORDER

John Thomas Scott has sued General Mills, Inc. ("GMI")[1] under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, and the New Mexico Unfair Trade Practices Act based on the termination of long-term disability benefits to which he claims entitlement under GMI's Long-Term Disability Income Plan ("the Plan"). (Doc. 4.) The uncontested facts giving rise to Scott's claim are that Scott had an on-the-job accident on June 28, 2006, that he was subsequently assigned to positions based on his work limitations from August 2006 to August 2007, that he received long-term disability benefits under the Plan after August 2007, and that his benefits were terminated on August 7, 2009. (Doc. 4 at 2; Doc. 7 at 1-2.)

Scott has requested that he be allowed to pursue limited discovery from GMI. (Doc. 14.) The discovery sought relates to the experts who evaluated Scott, including their qualifications and their relationship to GMI, and to the claims review process. (*Id.* at 2.) Scott seeks to submit interrogatories and requests for production and, if necessary, to depose four individuals. (*Id.*) GMI opposes any discovery in this case, arguing that Scott has failed to meet his burden in showing the

---

[1] While Scott named the Defendant as "General Mills" in his complaint, the Defendant has advised that its correct name is "General Mills, Inc." (Doc. 7 at 1.) I will use the Defendant's correct name in the text of this order.

1

propriety of discovery and that the information sought would constitute a fishing expedition.  (Doc. 15 at 3, 6.)  In reply, Scott counters that he "has sought discovery to flesh out the extent of the [Plan Administrator's] conflict of interest . . . ."  (Doc. 16 at 2.)

### STANDARD OF REVIEW

ERISA is "an enormously complex and detailed statute."  *Conkright v. Frommert*, 130 S. Ct. 1640, 1644 (2010) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 262 (1993)).  In crafting ERISA, Congress chose not to require employers to establish benefits plans and instead sought to encourage them to create plans that would be fair and protective of the employee's benefits by enacting a regime with predictable liabilities.  *Id.* at 1648-49.  While ERISA does allow for federal court review of the administrative decision on benefits, Congress did not specify the standard that federal courts should employ in conducting such review.  *See* 29 U.S.C. § 1132(a)(1)(B); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989).

To fill this gap, the Supreme Court has determined that courts reviewing plan administrator decisions should generally conduct a *de novo* review; if, however, the plan gives the administrator discretionary authority to determine benefits eligibility or to construe the plan's terms, the courts must apply a more deferential abuse of discretion standard.  *Firestone*, 489 U.S. at 115.  In *Firestone*, the Court recognized that a plan administrator may have a conflict of interest in making benefit determinations where he or she both funds and administers the plan.  *Id.*  In a later case, the Court went into greater detail about the impact of a conflict of interest.  *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). The Court held that an abuse of discretion standard still applies where this potential conflict exists, but that the conflict should be taken into account as one factor among many in evaluating the reasonableness of the administrator's decision.  *Glenn*, 554 U.S. at 115-17.

In this case, GMI has asserted that the Plan gave the Plan Administrator discretion to interpret the Plan. (Doc. 15 at 2 n.2.) While the party arguing for the more deferential standard of review bears the burden of establishing that standard, *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010), Scott has not disputed this assertion. Therefore, the court will likely apply the abuse of discretion standard in reviewing this benefits decision.[2]

## DISCOVERY

Just as ERISA does not designate a standard of review, ERISA does not address the proper scope of discovery. In resolving whether and to what extent to permit discovery, courts have generally looked to the applicable standard of review for guidance. *See Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151 (10th Cir. 2010); *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1203 (10th Cir. 2002). Under either standard, courts are ordinarily restricted to the administrative record in reviewing the plan administrator's decision. *Hall*, 300 F.3d at 1201, 1202 ("This Circuit, along with the majority of other federal courts of appeals, has held that in reviewing a plan administrator's decision for abuse of discretion, the federal courts are limited to the 'administrative record'" and "the best way to implement ERISA's purposes . . . is ordinarily to restrict *de novo* review to the administrative record . . . .").[3]

---

[2] If there were procedural irregularities and the administrator did not substantially comply with ERISA requirements, the district court might apply *de novo* review. *See LaAsmar*, 605 F.3d at 797. However, Scott has not alleged that any irregularities existed.

[3] Under *de novo* review in this circuit, the administrative record may be supplemented under certain exceptional circumstances. *Hall*, 300 F.3d at 1203. The Tenth Circuit provided the following non-exhaustive list of circumstances that could warrant the admission of additional evidence:
> [C]laims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have

Under the abuse of discretion standard, the Tenth Circuit has held that courts may not look beyond the administrative record and documents presented to the plan administrator prior to his or her decision when reviewing the merits issue of eligibility for benefits. *Murphy*, 619 F.3d at 1162; *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1011 (10th Cir. 2008); *Cardoza v. United of Omaha Life Ins. Co.*, No. CV 09-1003 MV/WPL (June 2, 2010), Doc. 23 at 3. As a result, "extra-record discovery would generally seem inappropriate." *Murphy*, 619 F.3d at 1157. However, the court recently clarified that if there is an inherent dual-role conflict of interest, the court may look outside the record when evaluating the seriousness of that conflict. *Id.* at 1162. As a result, discovery relating to "the scope and impact of a dual role conflict of interest" may be appropriate in some circumstances. *Id.*

The court in *Murphy* did not explicitly delineate the circumstances in which discovery as to a conflict of interest may be appropriate. It did provide some guidance, though, by directing courts to apply Federal Rule of Civil Procedure 26(b) to discovery requests on this topic. *Id.* The court reminded lower courts that the burden of demonstrating the propriety of the discovery lies on the party seeking discovery. *Id.* at 1163. Furthermore, the court issued numerous warnings against broad discovery that apply exclusively to ERISA cases. *Id.* at 1162-63. Specifically, it warned that "unnecessarily broad discovery that slows the efficient resolution of an ERISA claim" should not be permitted. *Id.* Additionally, it stated that ERISA's goal of speedy and inexpensive resolution of claims will often militate against broad discovery. *Id.* at 1163. While the court recognized the substantial discretion of the lower courts in ruling on discovery matters, the court issued one final

---

presented in the administrative process.
*Id.* (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993)).
   In this case, Scott has not alleged any exceptional circumstances aside from raising concerns about the impartiality, or conflict of interest, of the plan administrator. Because discovery as to this conflict of interest will be addressed in the discussion of discovery allowed under the abuse of discretion standard, I need not consider whether further discovery would be permissible were the court to apply the *de novo* standard of review.

warning: "The utility of such expansive discovery is likely in all but the most unusual cases to be outweighed by the burdensomeness and costs involved." *Id.* at 1164 n.9.

Since the *Murphy* decision, few courts within this circuit have wrestled with applying its principles to the facts of specific cases. The first to do so was the lower court to which *Murphy* was assigned. On remand, the court characterized the plaintiff's discovery requests as "broad and sweeping." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, No. CV 08-25 RHS/LFG (D.N.M. Oct. 1, 2010), Doc. 67 at 2. The court stated that a claimant could demonstrate the severity of the conflict by showing that the policies and procedures demonstrate a conflict of interest, that the policies and procedures were not followed, or that the plan administrator has a history of biased claims administration. *See id.* at 6-7. The court restricted the topics of discovery to those that might reveal such information and limited the amount of discovery to one deposition, twenty interrogatories, and twenty requests for production. *Id.* at 9-10, *aff'd id.*, Doc. 77.

In the next decision interpreting *Murphy*, the circumstances strongly suggested that a conflict of interest influenced the denial of benefits to the claimant; as a result, the court did not provide much analysis in its application of *Murphy*. *Huynh v. Liberty Life Assurance Co. of Boston*, No. CV 10-276 JH/RHS (D.N.M. October 18, 2010), Doc. 34. There, the claimant alleged that the opinions of ten experts were ignored in favor of one expert report purchased at an exorbitant price. *Id.*, Doc. 30 at 3-4. The court permitted all propounded interrogatories and requests for production, but limited the claimant to two depositions of six hours each. *Id.*, Doc. 34.

The final court to discuss *Murphy* found significant factual distinctions between the two cases and concluded that discovery was unwarranted. *Jaremko v. ERISA Admin. Comm.*, No. 10-1137-RDR, 2011 WL 42881 at *3 (D. Kan. Jan. 6, 2011). That court found it telling that the plaintiff had alleged a conflict of interest for the first time in his supplemental response brief. *Id.*

at *2. The court examined the language of the plan, finding that the defendant did not benefit financially from its pension decisions because the plan included a nonreversion clause. *Id.* at *3. On this basis, the court conclusively found that no conflict of interest existed and, thus, no discovery was warranted. *Id.*

In this case, Scott specifically alleged a conflict of interest for the first time in his reply on the motion for discovery. (Doc. 16 at 1.) However, GMI at no point disputes that it is responsible for making both the disability determination and the benefits payments. As a result, GMI operated under an inherent dual-role conflict of interest, and discovery to determine the seriousness of the conflict may be appropriate. *See Murphy*, 619 F.3d at 1154, 1162. The issue that this court faces, then, is determining whether the circumstances present here warrant discovery.

*Murphy* mandates that the party seeking discovery must demonstrate its necessity. *Id.* at 1163; *see also Hall*, 300 F.3d at 1203 ("The party seeking to supplement the record bears the burden of establishing why the district court should exercise its discretion to admit particular evidence by showing how that evidence is necessary to the district court's de novo review."). While the administrative record here is lengthy, comprising 337 pages, (Doc. 15 at 2), Scott contends that it fails to provide relevant information about the doctor and vocational expert retained by GMI to evaluate Scott. Specifically, he claims that the record omits their "qualifications, professional and non-professional affiliations," and relationship to GMI. (Doc. 16 at 4.) This contention combined with the uncontested allegation that GMI operated the Plan under a dual-role conflict of interest must be sufficient to satisfy the burden set in *Murphy*; if it were otherwise, the burden would prove insurmountable.[4]

---

[4] *Murphy* recognized that strong interests specific to ERISA militate against broad discovery, 619 F.3d at 1162-63, and those interests are equally present in this case. However, the court in *Murphy* was careful to use the modifier "broad;" it did not suggest that those interests militate against narrowly-tailored discovery. It also recognized that the

6

*Murphy* then requires courts to consider the factors included in Federal Rule of Civil Procedure 26(b). 619 F.3d at 1162. Discovery must be limited if it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). Furthermore, courts must conduct a balancing test to determine whether the "burden or expense of the proposed discovery outweighs its likely benefit." *Id.* at (b)(2)(C)(iii). If, as Scott claims, the administrative record is silent as to the relationship between GMI and the experts it retained, then the discovery is not cumulative. Furthermore, GMI presumably has the best and easiest access to this information, since it retained and compensated the experts; thus, it cannot be obtained more easily from another source. The greater issue is the balancing test. The seriousness of the conflict of interest is simply one factor among many that the court considers in reviewing an ERISA decision. *Glenn*, 554 U.S. at 115-17. Thus, the benefit of discovery into the severity of the conflict of interest is fairly small. On the other hand, narrowly tailored, limited discovery specific to that issue should not be unduly burdensome or costly. GMI should have fairly easy access to information relating to whether it has a conflict of interest and to its relationship with the retained experts.

Therefore, I find that limited and narrowly-tailored discovery as to the presence and seriousness of GMI's conflict of interest is warranted in this case. However, Scott's discovery requests extend beyond the amount and scope of discovery warranted by his allegations. Scott will not be permitted to take any depositions at this time, for interrogatories and requests for production should suffice to inquire into the limited topics set out below. Furthermore, he will not be permitted

---

claimant is at a distinct disadvantage in attempting to access the information necessary to evaluate the inherent conflict of interest and in including such relevant information in the administrative record. *Id.* at 1158 n.2. The claimant would face the same disadvantage in attempting to meet his burden for discovery if more was required of him than a viable claim that there is a conflict of interest and that the information necessary to evaluate that conflict is not in the record.

to inquire into the claims review process in general or the qualifications of the experts. Scott did not meet his burden in explaining how information related to the claims review process would demonstrate the seriousness of GMI's conflict of interest. The qualifications of the experts is relevant only to the merits issue of the case – the reasonableness of the Plan Administrator's decision – and Scott failed to establish any way that their qualifications might be relevant to the conflict of interest.

Scott may submit up to ten (10) interrogatories and ten (10) requests for production to GMI on the following topics:

1. The presence of a conflict of interest, and

2. The relationship between GMI and both Dr. Timothy Crimmons and Judith Beard. This may include information related to how GMI retained the experts to evaluate Scott, how GMI structured their compensation, any instructions or guidelines given to the experts by GMI, and the number of times that GMI has retained them to perform evaluations.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.